IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ISABELLA PIZZA INC., et al.,**<br><br>Plaintiffs,<br><br>*v.*<br><br>**TIOGA-FRANKLIN SAVINGS BANK, et al.,**<br><br>Defendants. | CIVIL ACTION<br><br><br><br>NO. 25-3306-KSM |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                                                           **January 27, 2026**

Plaintiffs Isabella Pizza Inc., Bella Investment Properties, LLC, and Linda R. Martorano bring this suit against Defendants Tioga-Franklin Savings Bank ("TFSB") and Innovative Financing & Consulting Group, LLC, d/b/a Innovative Financing Solutions ("Innovative"). (Doc. No. 20.)  Broadly, Plaintiffs allege that Defendants improperly handled multiple loans for, and "failed to abide by contract and credit terms" made with, Plaintiffs.  (*Id.* at 2.)  Plaintiff Martorano, individually, brings a claim against both Defendants under the Truth in Lending Act of 1968, 15 U.S.C. § 1601 (Count 1).  (*See id.* at 9–12.)  And all three Plaintiffs bring claims against both Defendants under the Commonwealth of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann.§ 201–2(4)(xxi) (Count 2) and the common law (Count 3).  (*See id.* at 12–18.)

Presently before the Court is Innovative's Motion to Dismiss Plaintiffs' Amended Complaint or Compel Arbitration.[1]  (Doc. No. 24).  Innovative argues that none of Plaintiffs'

---

[1] TFSB has also separately moved to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 23.)  Because the Court does not reach the merits of Plaintiffs' Amended Complaint in this Memorandum, we do not yet rule on TFSB's motion.

counts adequately state a claim under their respective statutory or common law schemes, and then argues that "if any of the claims . . . survive motion to dismiss, Plaintiffs' claims should be remanded to AAA Arbitration." (*Id.* at 19 (cleaned up).)  In response, Plaintiffs argue the Amended Complaint adequately states a claim, and as discussed in detail in this Memorandum, argue that (1) Innovative has waived its claim to arbitration by requesting the Court first rule on its Motion to Dismiss prior to remanding to arbitration and (2) if Innovative has not waived, only Plaintiffs Isabella Pizza Inc. and Bella Investment Properties, LLC, and not Plaintiff Martorano, are subject to arbitration.  (Doc. No. 26-2 at 19–21.)  Innovative replies that it has not waived any rights to arbitration because it moved at the same time for each remedy and that Plaintiff Martorano is also subject to arbitration in her personal and professional capacities.  (Doc. No. 28 at 9–14.)

For the reasons discussed below, the Court finds that there is a valid arbitration clause here, it is binding on all Plaintiffs, and Innovative has not waived its right to compel this arbitration.  The Court grants Innovative's Motion to Compel Arbitration, and denies Innovative's Motion to Dismiss as moot.

**I.     Background[2]**

    ***A.     The Loan***

In 2019, Plaintiff Martorano, "on behalf of and as the owner of [the other two Plaintiffs], applied to TFSB for a Small Business Association ('SBA') Small Loan under the Section 7(a) loan program." (Doc. No. 20 ¶ 12.)  Innovative was "TFSB's SBA administrator" and assisted in "process[ing] the application." (*Id.* ¶ 14.)  Importantly, as part of Innovative's work assisting

---

[2] The facts described herein are taken from Plaintiff's Amended Complaint and documents attached therein.  (*See* Doc. No. 20.)  The Court assumes their truth for purposes of this Memorandum.

with the application, "Linda Martorano, Individually and Isabella Pizza, Inc . . . and Bella Investment Properties, LLC" entered into a Consulting Services Engagement Agreement (the "Consulting Agreement") with Innovative.  (Doc. No. 20-1 at 2.)  The Consulting Agreement is one of the bases upon which Plaintiffs bring this action against Innovative specifically.  (*See* Doc. No. 20 ¶ 14.)  Plaintiffs claim that Defendants' actions—and inactions—relating to the application led to "the SBA approving loan terms in July 2020 that were materially different than those for which the [Plaintiffs] applied, [and] which Defendants could not accept."  (*Id.* ¶ 21.)

    B.  *The Consulting Agreement & Arbitration Clause*

   On December 17, 2019, the Consulting Agreement was signed and executed by Borrower (defined as "Linda Martorano, Individually and Isabella Pizza, Inc. . . . and Bella Investment Properties, LLC") and Innovative Financing & Consulting Group.  (Doc. No. 20-1 at 2, 6.)  The Consulting Agreement "represent[ed] a Limited Agency Engagement whereby Borrower engage[d] [Innovative] as its exclusive financing agent for the limited purposes herein outlined." (*Id.* at 2.)  Paragraph 10 of the Agreement, entitled "Arbitration of Disputes", states:

> The parties hereby agree to submit any dispute or controversy, at law or in equity, to binding arbitration under the Rules of the American Arbitration Association. Said dispute(s) shall be heard in Delaware County in the State of Pennsylvania. The prevailing party shall be entitled to legal costs and fees, arbitration costs and arbitrator's fees. In the event that legal action becomes necessary to confirm and/or collect the award of the arbitrator, the prevailing party in arbitration shall be entitled to reasonable attorney's fees for post-arbitration action. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(*Id.* at 5.)  Each page of the Consulting Agreement bears the handwritten initials "LM" on the bottom right corner, and it is signed by Linda Martorano, President of Isabella Pizza, Inc. and Managing Member of Bella Investment Properties, LLC and Michael Ryan, Managing Member of Innovative.  (Doc. No. 20-1 at 2–6.)

3

### C.  *Procedural History*

On June 27, 2025, Plaintiffs filed their Complaint in this Court.  (Doc. No. 1.)  After TFSB filed its first Motion to Dismiss the Complaint (Doc. No. 14), Plaintiffs filed notice on August 25, 2025, that they intended to amend their Complaint (Doc. Nos. 14, 15).  The next day, the Court set a preliminary pretrial conference for September 9, 2025, and ordered the parties to participate in a discovery conference pursuant to Federal Rule of Civil Procedure 26(f) on or prior to September 2, 2025.  (Doc. No. 18.)  All parties participated in the Rule 26(f) conference, submitted a joint report to the Court summarizing it, and participated in the September 9, 2025, conference.  (Doc. Nos. 19, 22.)  Innovative specifically mentioned in the Joint Rule 26(f) Report, as well as during the conference with the Court, that Innovative intended to file a motion to dismiss based on the arbitration clause in the Consulting Agreement.  (Doc. Nos. 19, 22.)  Plaintiffs' Amended Complaint was filed on September 4, 2025.  (Doc. No. 20.)  Innovative then filed its Motion to Dismiss or Compel Arbitration on September 18, 2025.  (Doc. No. 24.)  Plaintiffs responded on November 19, 2025, opposing Innovative's motion.  (Doc. No. 26.)  Innovative replied on November 25, 2025.  (Doc. No. 28.)

The operative Scheduling Order was put in place on November 5, 2025, and discovery was directed to begin as of that date.  (Doc. No. 25.)  Slightly more than a month later, Innovative filed a Motion to Stay Proceedings and for a Protective Order, arguing that participating in discovery would prejudice its arguments relating to its Motion to Compel Arbitration.  (*See* Doc. No. 29.)  After a hearing on Innovative's Motion to Stay, the Court granted the motion on December 23, 2025, and temporarily stayed proceedings pending the outcome of Innovative's Motion to Dismiss or Compel Arbitration.  (Doc. Nos. 30, 31.)  Oral argument on Innovative's motion was then held on January 22, 2026.  (Doc. Nos. 32, 33.)

Subsequently, Plaintiffs requested, and were granted, supplemental briefing on the issue of whether Innovative has waived its right to compel arbitration. (Doc. Nos. 34, 35.) Plaintiffs and Innovative both filed such supplemental briefs. (Doc. Nos. 36, 38.) The motion is thus ripe for resolution. For the reasons discussed below, the Court grants Innovative's motion to the extent it seeks to compel arbitration, and because the Court finds it appropriate to compel arbitration, we do not reach Innovative's arguments for dismissal.

## II.     Standard of Review

When deciding a motion to compel arbitration, a court must first determine the applicable standard of review: the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the summary judgment standard under Rule 56. *See Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017); *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013). "When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776.

Innovative argues that the Court should use the motion to dismiss standard, and, while Plaintiffs' briefing is silent on this issue, Plaintiffs' counsel conceded at oral argument that the Rule 12(b)(6) standard should apply here.[3] (*See* Doc. Nos. 24, 26, 28, 33.) Upon review of the

---

[3] That said, at oral argument, counsel for Plaintiffs asserted, **for the first time**, that he "was not entirely convinced" that the arbitration clause is valid. (1/22/26 H'rg Rough Tr. 9:7–9.) Counsel stated that after rereading the arbitration clause in the Consulting Agreement, he now believes it is overbroad and ambiguous, and asked the Court to order jurisdictional discovery on its enforceability. (*See id.*; Doc. No. 33.) The Court does not consider Plaintiffs' belated and untimely argument. *See Tomasko v. Iran H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (finding that "the specific objections that Weinstock raised for the first time at oral argument in the District Court have been waived"); *In re Corio*, 371 F. App'x 352, 355 (3d Cir. 2010) (finding that the bankruptcy court did not abuse its discretion when it refused to consider an argument raised for the first time during oral argument). But even if the Court were to consider this argument, it would fail on the merits. Plaintiffs have provided no facts to call into

Consulting Agreement and arbitration provision, which were attached by Plaintiffs to their Amended Complaint, the Court finds that the Rule 12(b)(6) standard governs because the arbitration agreement is clear on its face. (*See* Doc. No. 1, Ex. A; Doc. No. 20-1); *see also Silfee*, 696 F. App'x at 578 ("With a concededly authentic arbitration agreement attached to the complaint, the Rule 12(b)(6) standard was appropriate unless Silfee produced 'additional facts sufficient to place the agreement to arbitrate in issue.'"); *Lawson v. City of Philadelphia*, No. 18-cv-1912, 2019 WL 934976, at *3 (E.D. Pa. Feb. 25, 2019).

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief." *Guidotti*, 716 F.3d at 772. "[I]f, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint," then a complaint should be dismissed under Rule 12(b)(6). *Id.*; *see also id.* at 777 ("Under the Rule 12(b)(6) standard, there would be no reading of the complaint, no matter how friendly to [the plaintiff], that could rightly relieve her of the arbitration provision in the Account Agreement[.]").

**III.   Discussion**

As noted above, Innovative moves to compel arbitration of all claims brought by Plaintiffs against it. (*See* Doc. No. 24.) Plaintiffs oppose that motion, arguing that (1) Innovative has waived its claim to arbitration by requesting the Court first rule on its Motion to

---

question the clear terms of the arbitration clause in the Consulting Agreement. And Plaintiffs fail to explain how—or cite any authority showing that—the breadth of an arbitration clause, on its own, can support a proper challenge to validity under 9 U.S.C. § 2. Plaintiffs' **only** citation in support provided at oral argument, *Guidotti*, does not help their argument because in *Guidotti*: (1) the standard was summary judgment, (2) plaintiff argued she never received the agreements in question, and (3) the court found under that plaintiff had not met her burden to show a material dispute of fact. 716 F.3d at 776–81. In *Guidotti*, unlike here, there were no arguments made as to the nature of the agreement. *Id.*

Dismiss prior to remanding to arbitration and, (2) if Innovative has not waived its claim to arbitration, only Plaintiffs Isabella Pizza Inc. and Bella Investment Properties, LLC, and not Plaintiff Martorano, are subject to arbitration.  (Doc. No. 26-2 at 19–21.)  The Court discusses the relevant legal standards before analyzing these arguments.

   A.  *Motion to Compel Arbitration & Waiver Legal Standards*

  Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'"  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted).  Recently, the Supreme Court explained that "the FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quotation marks omitted).  Rather, this policy merely makes "arbitration agreements as enforceable as other contracts."  *Id.*  Section 4 of the FAA is the enforcement mechanism; it provides that a party "aggrieved" by the "failure" or "refusal of another to arbitrate under a written agreement for arbitration may petition" the court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement."  9 U.S.C. § 4.  "Because arbitration is a matter of contract, before compelling arbitration pursuant to the [FAA], a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that valid agreement."  *Kirleis*, 560 F.3d at 160; *see also Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019).

Although the FAA reflects a strong policy in favor of the right to arbitrate disputes, "[t]he contractual right to arbitrate, like any other right, can be waived." *Duong v. Pressler Felt & Warshaw, LLP*, No. 22-cv-5630, 2025 WL 1645625, at *6 (D.N.J. June 10, 2025). Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417 (applying waiver analysis to motion to compel arbitration pursuant to the FAA); *Field Intel. Inc v. Xylem Dewatering Sols. Inc*, 49 F.4th 351, 359 (3d Cir. 2022) ("A party can waive its ability to arbitrate a claim by litigating it in court.") In determining whether the right to arbitrate has been waived, courts in this Circuit "focus on [the movant's] conduct" and ask whether the movant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Valli v. Avis Budget Grp.*, 162 F.4th 396, 406–07 (3d Cir. 2025) (quoting *Morgan*, 596 U.S. at 419). But the Third Circuit has also held that a "case-specific waiver analysis is not susceptible to precise line-drawing." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 212 (3d Cir. 2010); *see also Valli*, 162 F.4th at 411 ("[O]ur analysis is contextual—it must be informed by the circumstances and context of each case, not controlled by bright-line rules.") (quotation marks omitted).

**B.    Analysis**

There exists a valid arbitration agreement in this action, it is binding on all Plaintiffs and Innovative, and, while Innovative has incorrectly framed its motion to compel arbitration, it has not waived its right to seek arbitration. Thus, Innovative's Motion to Compel Arbitration will be granted and its Motion to Dismiss will be denied as moot.

**1.    <u>Validity of the Arbitration Clause in the Consulting Agreement</u>**

As a preliminary matter, the Court finds that the Consulting Agreement (1) contains a valid and enforceable arbitration agreement that (2) is binding on Innovative and all Plaintiffs. Based upon the briefing, the first finding is not in dispute between the parties. (*See* Doc. No. 24

8

at 20 (arguing the arbitration clause in the Consulting Agreement "is a valid agreement, and the disputes . . . [here] fall within the broad language of the arbitration clause"); Doc. No. 26 at 19–21 (making no argument regarding the invalidity of the arbitration clause).)  Only the second finding is in dispute.  Plaintiffs argue the Consulting Agreement and its arbitration clause are only enforceable on the two corporate Plaintiffs and not Plaintiff Martorano.  (Doc. No. 26 at 20–21.)  In support, Plaintiffs make the extraordinary claim that "only [Isabella Pizza Inc. and Bella Investment Properties, LLC] signed IFS's Consulting Services Engagement Agreement" and "Plaintiff Martorano did not sign the Consulting Services Engagement Agreement in her individual capacity, as is plain from the face of the document." (*Id.*)  Plaintiffs' argument is completely meritless.  The first sentence of the Consulting Agreement defines the "Borrower" to include "Linda Martorano, ***Individually***."  (Doc. No. 20-1 (emphases added).)  And Ms. Martorano initialed each page of the agreement and signed the last page twice.  (*Id.*)[4]  The Consulting Agreement's arbitration clause is valid and binding on all Plaintiffs and Defendant Innovative.

---

[4] While it is plain from the face of the document that Plaintiff Martorano is party to the Consulting Agreement individually, even if that were not the case, Martorano would still be bound to the agreement as both an agent and a beneficiary.  Martorano was President of Isabella Pizza, Inc. and Managing Member of Bella Investment Properties, LLC, signed the Consulting Agreement in those capacities, and initialed each page.  (*See* Doc. 20-1.)  Plaintiffs' counsel conceded this much at oral argument.  (*See* Doc. No. 33; 1/22/26 H'rg Rough Tr. 13:1–2 ("She's certainly signing as a representative of those companies.").)  And "whether seeking to avoid or compel arbitration, a third-party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, *S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001).  Here, Plaintiff Martorano brings claims against Innovative arising out of actions or inactions relating to the Consulting Agreement.  (*See* Doc. No. 20.)  She cannot bring such claims and at the same time argue she is not bound by the express terms of the agreement she signed.

### 2. Waiver of Right to Compel Arbitration

So, the Court must now turn to the waiver analysis. Innovative has filed a Motion to Dismiss Plaintiffs' Amended Complaint or Compel Arbitration. (Doc. No. 24.) Innovative's motion asks the Court to rule on its motion to dismiss, and then "if any of Plaintiffs' Claims asserted against Innovative survive . . ., Plaintiffs' claims should be remanded to AAA Arbitration."[5] (Doc. No. 24 at 19.) Plaintiffs respond that Innovative's request that the Court only compel arbitration after ruling on the merits of its Motion to Dismiss constitutes a waiver of Innovative's arbitration rights. (*See* Doc. No. 26-2 at 19–21 ("[Innovative] has taken an affirmative step that is inconsistent with its argument that claims can only proceed in arbitration and has thus waived the ability to compel arbitration.")) Innovative replies that it cannot be found to have waived a right that it explicitly seeks in its motion. (Doc. No. 28 at 10.) Both parties are incorrect. Innovative has not waived its right to seek arbitration. But because it is asserting that right, the Court cannot grant—or even reach—Innovative's Motion to Dismiss.

"Before 2022, our Circuit—like many others—treated prejudice [a]s the touchstone for determining whether the right to arbitrate has been waived." *Valli*, 162 F.4th at 406 (collecting

---

[5] While this is how Innovative framed both its Motion to Dismiss or Compel Arbitration and its reply brief (*see* Doc. Nos. 24, 28), at oral argument Innovative's counsel clarified that did not "want [this Court] to [rule] on the merits first. We would like [this Court] to rule on the motion to compel. . . . We understand that this Court should not entertain arguments on the merits when there is a motion to compel arbitration issue before it." (1/22/26 Hr'g Rough Tr. 5:21–6:3.) In their supplemental briefing, Plaintiffs argue this "abrupt reversal" constitutes waiver and should also be denied by the Court under the doctrine of judicial estoppel. (Doc. No. 36.) Neither of Plaintiffs' arguments persuades. While Innovative did change the relief it sought from the Court, it cannot be said to have waived a right it consistently asserted throughout the brief time this case has been before this Court. The cases cited by Plaintiffs in their supplemental briefing are in accord. *See, e.g.*, *Valli*, 162 F.4th at 410 ("When the right-holder consistently and explicitly states on the record that it *does* intend to invoke arbitration, there is no uncertainty to resolve by inference and the predicate for implied waiver largely collapses") (emphasis in original); *Pumphrey v. Triad Life Scis., Inc.*, No. 24-60028, 2024 WL 4100495, at *3 (5th Cir. Sept. 6, 2024) (vacating a denial of a motion to compel arbitration and finding that "we have held that simply filing a motion to dismiss . . . is not necessarily[] enough to waive arbitration rights"). And judicial estoppel requires "a prior proceeding" and "bad faith," neither of which have been even alleged here. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777 (3d Cir. 2001).

cases).  But in *Morgan*, 596 U.S. 411, the Supreme Court overruled the prejudice framework and directed courts to "focus on [the movant's] conduct" and ask specifically whether the movant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 419.  Subsequently, the Third Circuit confirmed that any finding of waiver must be governed by the circumstances and context of each case, not controlled by bright-line rules.  S*ee Valli*, 162 F.4th at 411; *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339–41 (3d Cir. 2023).  While non-exhaustive, the types of factors courts have looked at post-*Morgan* "include considerations such as the timeliness of the arbitration request, the extent of the movant's merits-based arguments up to that point, and its participation in discovery."  *Hejamadi v. Midland Funding, LLC*, No. 18-cv-13203, 2024 WL 3159316, at *5 (D.N.J. June 25, 2024).[6]

Taking into account the full context of the instant action, the Court finds Innovative's conduct does not constitute waiver.  Waiver is "the ***intentional*** relinquishment or abandonment of a known right."  *Morgan*, 596 U.S. at 417 (emphasis added).  Plaintiffs' only argument regarding waiver is that Innovative asking this Court to rule on its motion to dismiss prior to potentially sending this case to arbitration "demonstrated a decision to pursue the benefits of litigating its arbitrable claims and is inconsistent with an intent to arbitrate."  (Doc. No. 26-2 at 20 (quoting *White*, 61 F.4th at 341).)   But as *White* itself makes clear just prior to that quotation,

---

[6] Prior to *Morgan*, courts in this Circuit looked to *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) when considering whether a right to compel arbitration had been waived.  In *Hoxworth*, the Third Circuit outlined the following factors relevant to prejudice: (1) timeliness; (2) the extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties engaged in discovery.  *Id.* at 926–27.  While prejudice is no longer the touchstone of the waiver analysis, the *Hoxworth* factors are still the types of facts courts may consider when reviewing the movant's conduct under *Morgan*.  *See, e.g.*, *White*, 61 F.4th at 340–41 (examining the litigation timing, extent of the defendant's motion practice, and the absence of any prior notice of an intent to arbitrate).

"motions to dismiss will not always evince an intent to litigate instead of arbitrate." *Id.*[7]; *see also Valli*, 162 F.4th at 411 (holding that filing a motion to dismiss "months after the arbitration clause took effect [] does not demonstrate intentional relinquishment").

Here, Innovative can hardly be said to have intentionally relinquished or abandoned its right to arbitrate these claims when it has consistently asserted its right since the start of this case.[8] As noted above, Innovative informed Plaintiffs of its intent to file a motion to dismiss based on the arbitration agreement in the parties' Joint Rule 26(f) Report, as well as stated it during the very first conference with the Court on September 9, 2025. (*See* Doc. Nos. 19, 22.) Then Innovative again asserted its right in (1) the very motion cited by Plaintiffs as evidence of waiver; (2) the first motion Innovative filed in this action; and (3) a motion that has not yet been ruled upon. *See Woodham v. Morgan Stanley*, No. 23-cv-02080, 2023 WL 7151191, at *6 (D.N.J. Oct. 31, 2023) (finding defendants did not waive right when "the motion to compel arbitration was the first motion filed by [d]efendants and was filed within a month of receiving summons"); *Button v. Dolgencorp, LLC*, No. 22-cv-7028, 2025 WL 642687, at *4 (D.N.J. Feb. 27, 2025) ("The Court finds that filing the motion to dismiss did not waive Defendant's right to arbitration here, where the motion was never fully briefed or decided by the Court."); *see also Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (emphasizing that the

---

[7] Plaintiffs' only other citation in support of waiver in their briefing is to *NEXUS 1, LLC v. Sidwell*, No. 23-cv-0216, 2025 WL 2375219 (E.D. Pa. Aug. 14, 2025), which is factually inapposite. In *NEXUS 1*, defendants had filed a related action in Delaware state court based on the same underlying contractual claims. *Id.* at *2. The court there found defendants "waived enforcement of the ADR by initiating the Delaware [l]itigation before engaging in [] ADR procedures." *Id.* at *4. That is not the case here, where Plaintiffs' suit—not any action from Innovative—is the initial action.

[8] As such, the Court disagrees with Plaintiffs' counsel's characterization during oral argument, that Innovative "just came in here and changed their position" sufficient to constitute waiver, so they should be able to argue about the validity of the arbitration clause. (1/22/26 H'rg Rough Tr. 15:20–21.) Innovative has asserted its right to arbitrate throughout this litigation. (*See* Doc. Nos. 19, 22, 24, 28, 29.) This is unlike Plaintiffs, who had multiple opportunities in conferences and briefings to mention their concern that the arbitration clause was overbroad. They failed to do so.

12

defendant "did not make an intentional decision" to forgo arbitration because it "pleaded [it] as an affirmative defense" and "repeatedly stated its intent to move to compel arbitration"); *Valli*, 162 F.4th at 411 (finding "ple[ading] arbitration as an affirmative defense" supports no waiver).

And Innovative's lack of waiver is further supported by Innovative' actions once the Court's Scheduling Order marking the beginning of discovery was issued. A party's participation in discovery can lead to a waiver of its right to arbitrate, and similarly its lack of participation can support a lack of waiver. *See Taylor v. CDS Advantage Sols.*, No. 20-2803, 2024 WL 1048124, at *9 (D.N.J. Mar. 9, 2024) (granting defendant's motion to compel arbitration where the parties had "not engaged in any discovery to date"); *Smith v. Experian Information Solutions, Inc.*, 2023 WL 6057377, at *5 (D.N.J. Sept. 14, 2023) (finding defendant had not waived arbitration where it "filed an answer, attended two conferences, and engaged in the early stages of pre-trial discovery"). Here, shortly after receipt of the Court's Scheduling Order, Innovative's counsel emailed Plaintiffs' counsel and stated that Innovative "will not be responding to discovery in the absence of a court order" and shortly thereafter sought a stay of discovery pending the outcome of its Motion to Dismiss or Compel Arbitration. (Doc. No. 29 at 14; *see id.* at 8 (stating Innovative's concern that participating in discovery would "waive its right to invoke arbitration provisions set forth in the contract between the parties").) Given Innovative's initial assertion of their right to compel arbitration and their prompt recognition that participation in discovery may waive their right, it can hardly be said to have demonstrated intentional relinquishment of its right to compel arbitration. So, considering the "circumstances and context" unique to the facts of this case, the Court finds that Innovative has not intentionally relinquished its known right to arbitrate. *White*, 61 F.4th at 339.

### 3. **<u>Innovative's Motion to Dismiss</u>**

Having found that Innovative has not yet waived its right to compel arbitration and has requested this Court compel arbitration based on the arbitration clause in the Consulting Agreement, the Court must honor that request prior to any ruling or discussion of Innovative's Motion to Dismiss. "In deciding motions to compel arbitration, courts are forbidden to address or resolve the underlying merits of the dispute; decisions affecting the merits are left to the arbitrator." *Merrill Lynch, Pierce, Fenner & Smith v. Brillman*, No. 90-cv-2732, 1991 WL 1836, at *2 (E.D. Pa. Jan. 8, 1991); *see also Trenton Metro. Area Loc. of Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 636 F.3d 45, 56 (3d Cir. 2011) ("Where a dispute is subject to a binding arbitration agreement, a district court is without jurisdiction to address the merits of the complaint.") (cleaned up). For the Court to address the merits here *prior* to sending this case to arbitration would not merely go against the "congressional declaration of a liberal federal policy favoring arbitration agreements," but it would also be the Court acting without jurisdiction. *White*, 61 F.4th at 338; *Friedman v. Yula*, 679 F. Supp. 2d 617, 627 (E.D. Pa. 2010) ("Once a court has determined that the dispute . . . falls within the substantive scope of the parties' arbitration clause, it is barred from hearing the merits . . . and must refer the matter to arbitration."). In sum, the Court has "has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those [it] will deem meritorious." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019) (quotation marks omitted). The Court will not reach the merits of Innovative's Motion to Dismiss.

## IV. Conclusion

For the foregoing reasons, the Court finds that there is a valid and enforceable arbitration agreement that binds Innovative and all Plaintiffs, Innovative has sought to compel arbitration, and Innovative has not waived its right to do so.  The Court grants Innovative's Motion to Compel Arbitration and denies as moot Innovative's Motion to Dismiss.  Innovative and Plaintiffs will be sent to arbitration pursuant to the terms of the arbitration agreement.  The stay previously issued in this case will be lifted.  An appropriate Order follows.