**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ISABELLA PIZZA INC., et al.,** | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | |
| **TIOGA-FRANKLIN SAVINGS BANK,** | **NO. 25-3306-KSM** |
| Defendant. | |

**<u>MEMORANDUM</u>**

**Marston, J.**                                                                                                          **March 6, 2026**

Plaintiffs Isabella Pizza Inc. and Bella Investment Properties, LLC (collectively, the

"Companies"), along with their owner Linda R. Martorano bring this suit against Defendant

Tioga-Franklin Savings Bank ("TFSB").  (Doc. No. 20.)  Broadly, Plaintiffs allege that TFSB

improperly handled multiple loans for, and "failed to abide by contract and credit terms" made

with, Plaintiffs.  (*Id.* at 2.)  Plaintiff Martorano, individually, brings a claim against TFSB under

the Truth in Lending Act of 1968, 15 U.S.C. § 1601, ("TILA") (Count One).  (*See id.* at 9–12.)

And all three Plaintiffs bring claims against TFSB under Pennsylvania's Unfair Trade Practices

and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann.§ 201–2(4)(xxi) (Count Two), and

its common law prohibition against fraudulent inducement (Count Three).  (*See id.* at 12–18.)

Presently before the Court is TFSB's Motion to Dismiss Plaintiffs' Amended Complaint.

(Doc. No. 23.)  TFSB argues, as a threshold matter, that this Court does not have subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1) due to the *Rooker-Feldman* doctrine

and *res judicata*.  (*Id.* at 16–17.)  It then argues that under Federal Rule of Civil Procedure

12(b)(6), Plaintiff Martorano's claim under the TILA should be dismissed with prejudice

because it does not apply to the loans and conduct at issue and is untimely.  (*Id.* at 21–23.)

TFSB also argues that should this Court dismiss the claim under the TILA, it must also decline

supplemental jurisdiction over Plaintiffs' state and common law claims.[1]  (*Id.* at 19–20.)  In

response, Plaintiffs argue that neither *Rooker-Feldman* nor *res judicata* are bars to their claims

because they are not seeking to disturb a prior state court ruling and they never filed affirmative

claims in state court, respectively.  (Doc. No. 27 at 11–13.)  Further, they argue that all of

Plaintiffs' claims adequately state a claim and thus should survive TFSB's Motion to Dismiss.

(*Id.* at 13–20.)

For the reasons discussed below, the Court finds that Plaintiffs' claims here survive

*Rooker-Feldman* scrutiny, but must still be dismissed under *res judicata*.  And, in the alternative,

the Court would also dismiss Count One and decline supplemental jurisdiction over Counts Two

and Three.  The Court will thus grant TFSB's Motion to Dismiss.

## I.    Background[2]

### A.    *The Loans*

In late 2019, Plaintiff Martorano, "on behalf of and as the owner of the Companies,

applied to TFSB for a Small Business Association ('SBA') Small Loan under the Section 7(a)

loan program" (the "SBA Loan").[3]  (Doc. No. 20 ¶ 12.)  "The Companies applied for the SBA

---

[1] If the Court disagreed with TFSB on all prior discussed grounds for dismissal, TFSB also sought dismissal of the state and common law claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 23 at 23–26.)  Because the Court finds that Plaintiffs' claims are barred on *res judicata* grounds, and would, in the alternative, dismiss Plaintiff Martorano's claim under the TILA and decline supplemental jurisdiction over the other two claims, we do not reach these arguments.

[2] The facts described herein are taken from Plaintiff's Amended Complaint and documents attached therein.  (*See* Doc. No. 20.)  The Court assumes their truth for purposes of this Memorandum.

[3] According to the Amended Complaint, this loan program is "the SBA's primary business loan program for providing financial assistance to small businesses."  (Doc. No. 20 ¶ 12.)

[L]oan to refinance existing obligations and to enable the Companies subsequently to obtain construction funding." (*Id.* ¶ 13.) Plaintiffs sought the SBA Loan because the Companies "were in critical need of [ ] financing, and it was "to close within sixty (60) days of the date of application," would be for less than $500,000, and would have an interest rate of "no more than five percent (5%)." (*Id.* ¶¶ 16–17.) But by the end of June 2020, the SBA Loan had still not closed due to actions and inactions by TFSB, so "TFSB offered to establish a bridge loan until TFSB could correct its errors in processing the application." (*Id.* ¶ 21.)

The Companies, "having no options at [that] point," and still "being in critical need of funding to, *inter alia*, pay off existing creditors" agreed to the proposed loan, and executed the related note (collectively with the loan, the "Bridge Loan"), on July 29, 2020. (*Id.* ¶¶ 22–23; Doc. No. 20-3.) The terms of the Bridge Loan were:  $341,854.53, accruing interest at 6% annually, with interest due starting on September 1, 2020, and "[t]he outstanding principal balance and any accrued but unpaid interest" due November 1, 2020. (Doc. No. 20-3; *see also* Doc. No. 20 ¶ 26.) The Bridge Loan was secured with a mortgage against property owned by Plaintiff Bella Investment Properties and guaranteed by Plaintiff Martorano, personally. (Doc. No. 20 ¶¶ 24, 27.) And it contained a Power to Confess Judgment provision, which empowered TFSB to obtain judgment against the Companies in the event of a default. (Doc. No. 20-3 at 5.)

The Bridge Loan was intended to be a "temporary financing" solution while the Companies waited for their SBA Loan application to be approved. (Doc. No. 20 ¶ 28.) But TFSB "never replaced the [Bridge] Loan with [the] SBA [L]oan" and for years, the Companies made monthly payments to TFSB under the Bridge Loan's terms "based on [their] understanding with and as represented by TFSB that the [Bridge] Loan would be replaced with financing comparable to the SBA [L]oan." (*Id.* ¶¶ 29, 32.) Then, on November 18, 2024, TFSB filed a

3

Complaint in Confession of Judgment against Plaintiffs in the Court of Common Pleas of Philadelphia County, No. 241102256 (the "State Court Action"), alleging that Plaintiffs had defaulted on the Bridge Loan on August 1, 2023.  (*Id.* ¶ 33; Doc. No. 23 at 93.)  Plaintiffs claim this was retaliation for Plaintiffs filing a complaint against TFSB with the Federal Deposit Insurance Corporation ("FDIC") on July 24, 2024.  (Doc. No. 20 ¶¶ 37–38; Doc. No. 20-5.)

###### B.    *The State Court Action[4]*

TFSB filed its State Court Action Complaint pursuant to the Power to Confess Judgment provision in the Bridge Loan.  (*See* Doc. No. 23 at 88–110.)  On December 23, 2024, Plaintiffs filed a petition seeking to strike and/or open the judgment, which is a procedure under Pennsylvania law that allows borrowers like Plaintiffs to challenge confessed judgments.  (*See id.* at 111–49); Pa. R. Civ. P. 2959 (Striking Off or Opening Judgment; Pleadings; Procedure). In support of their petition, Plaintiffs alleged that TFSB only filed the State Court Action after Plaintiffs "filed a complaint against TFSB with the Federal Deposit Insurance Corporation ('FDIC') due to . . . TFSB failing to abide by contract and credit terms," including not processing the SBA Loan in a timely fashion, charging Plaintiffs six percent on the Bridge Loan instead of the sub-five percent of the SBA Loan, and never giving Plaintiffs the SBA Loan.  (Doc. No. 23 at 118.)  Plaintiffs alleged this caused them "irreversible financial harm and lost opportunity costs."  (*Id.*)  TFSB answered Plaintiffs' petition to strike and/or open on January 10, 2025,

---

[4] The facts described herein are taken from filings in the State Court Action, of which this Court takes judicial notice.  *Orabi v. Att'y Gen. of the United States*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another [c]ourt's docket.").  And as Plaintiffs acknowledge in their opposition to TFSB's Motion to Dismiss, courts may consider matters of public record, such as court filings, in deciding a motion to dismiss.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006).  To the extent documents from the State Court Action docket were filed as exhibits to the Amended Complaint, TFSB's response, or Plaintiffs' reply, the Court adopts the pagination in the CM/ECF system.

arguing it committed no wrongdoing and reaffirming its request to have the Court of Common Pleas enter judgment in its favor.  (*Id.* at 150–70.)

On March 14, 2025, the Honorable Michael E. Erdos of the Court of Common Pleas of Philadelphia County denied Plaintiffs' petition and entered judgment on behalf of TFSB.  (*Id.* at 190–93.)  He characterized the allegations in the petition as "generally sounding like run of the mill administrative hiccups related to any commercial loan transaction," and ruled against Plaintiffs because they "signed the note and guaranty providing for confession of judgment *after* these various administrative issues had allegedly arisen."  (*Id.* at 193 (emphasis in original).)  Plaintiffs moved for reconsideration, which Judge Erdos denied due to the motion "raising the same arguments found in their petition to strike or open."  (*Id.* at 225.)  Plaintiffs appealed to the Superior Court of Pennsylvania on April 15, 2025, and the appeal remains pending as the date of this Memorandum.  *See generally Tioga-Franklin Savings v. Isabella Pizza*, 931 EDA 2025 (Pa. Super. Ct.).

### C.      *The Instant Action*

On June 27, 2025, Plaintiffs filed their initial Complaint in this Court.  (Doc. No. 1.)  After TFSB initially filed a Motion to Dismiss the Complaint (Doc. No. 14), Plaintiffs filed notice on August 25, 2025 that they intended to amend their Complaint (Doc. No. 15).  And Plaintiffs' Amended Complaint was filed on September 4, 2025.  (Doc. No. 20.)

As discussed above, Plaintiffs bring three claims against TFSB:  failure to disclose credit terms under the TILA, deceptive conduct under the UTPCPL, and fraudulent inducement under Pennsylvania's common law.  (*Id.* ¶¶ 48–85.)  Specifically, Plaintiffs allege TFSB "failed to abide by contract and credit terms," including not processing the SBA Loan in a timely fashion, charging Plaintiffs more on the Bridge Loan than they would have with the SBA Loan, and never

giving Plaintiffs the SBA Loan.  (*Id.* ¶ 2.)  Plaintiffs allege this caused them "irreversible financial harm and lost opportunity costs."  (*Id.*)

TFSB filed the Motion to Dismiss currently in front of this Court on September 18, 2025.  (Doc. No. 23.)  Plaintiffs responded on November 19, 2025, opposing TFSB's motion.  (Doc. No. 27.)  The motion is thus ripe for resolution.

## II.    Standard of Review

Turning to TFSB's Motion to Dismiss, the Court begins with TFSB's argument that this Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and the *Rooker-Feldman* doctrine before addressing TFSB's *res judicata* argument under Rule 12(b)(6).[5]  (Doc. No. 23 at 15–19.)

### A.    Rule 12(b)(1)

"Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Williams v. Litton Loan Servicing*, No. 16cv5301, 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."  *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 342 (E.D. Pa. 2019) (cleaned up).

---

[5] While TFSB's motion frames its *res judicata* argument under Rule 12(b)(1), "res judicata is an affirmative defense and not a doctrine which would defeat the subject matter jurisdiction of this [C]ourt."  *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *see also Meyers v. Caliber Home Loans, Seterus, Inc.*, No. 19cv596, 2019 WL 4393377, at *2 & n.10 (M.D. Pa. Sept. 13, 2019) (discussing how the Third Circuit "has stated" that "res judicata . . . [is] properly examined under Rule 12(b)(6)").  As such, the Court analyzes TFSB's *res judicata* argument under Rule 12(b)(6) and not Rule 12(b)(1).

Here, while TFSB describes its attack as factual (Doc. No. 23 at 15), the Court construes its argument as a facial attack because it presents a legal argument against jurisdiction—*Rooker-Feldman* doctrine—as opposed to a factual one.  *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("A factual attack requires a factual dispute, and there is none here."); *see also Farzan v. Bayview Loan Servicing, LLC*, No. 20cv03330, 2021 WL 613843, at *2 n.4 (D.N.J. Feb. 17, 2021) ("*Rooker-Feldman* is a facial attack on jurisdiction rather than a factual one."); *Meyers*, 2019 WL 4393377, at *3; *cf. Williams*, 2018 WL 6600097, at *5 ("When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack, which contests the sufficiency of the complaint because of a defect on its face." (quotation marks omitted)).  "Thus, we consider whether Plaintiffs' allegations, attached documents, and referenced proceedings establish the necessary jurisdiction . . . ." *Meyers*, 2019 WL 4393377, at *3.[6]

### B.  Rule 12(b)(6)

Similarly, when reviewing a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations to determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted).  However, the court is not "compelled to

---

[6] While Plaintiffs' reply takes issue with two 2025 affidavits filed as exhibits to TFSB's Motion to Dismiss because they are "not public records" (Doc. No. 27 at 9), the affidavits merely attest to the veracity of filings in the State Court Action, which are public records, and may be properly considered by the Court.  *See BASF Corp. v. Edgemont Auto Body, Inc.*, No. 18cv3981, 2019 WL 859223, at *2 (E.D. Pa. Feb. 22, 2019) (treating motion to dismiss for lack of subject matter jurisdiction as facial attack and taking into account receipt attached to motion to dismiss because it did not "controvert[ ] the plaintiff's allegations"); *Silverberg v. City of Philadelphia*, No. 19cv2691, 2020 WL 108619, at *4 (E.D. Pa. Jan. 8, 2020), *aff'd*, 847 F. App'x 152 (3d Cir. 2021) (finding that a state court docket, two opinions, and an order "are all matters of public record and [p]laintiff himself refers to them in his Amended Complaint. Accordingly, they may be properly considered on a facial attack").

accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). And "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck*, 452 F.3d at 260.

## III.   Discussion

TFSB seeks dismissal of Plaintiffs' claims with prejudice on three grounds. *First*, it argues the *Rooker-Feldman* doctrine prevents Plaintiffs from trying to use this Court as an appellate court for the State Court Action. (Doc. No. 23 at 16–17.) *Second*, TFSB claims Plaintiffs already argued and lost on these claims in the State Court Action, so they should be precluded from a second bite at the apple here. (*Id.* at 17–19.) *Third*, it argues Plaintiff Martorano's claim under the TILA is improper and untimely, and the Court should not exercise supplemental jurisdiction over the other two claims. (*Id.* at 19–23.) Plaintiffs dispute each of these potential grounds for dismissal. (Doc. No. 27 at 11–13, 17–20.)

Both sides are correct, in part. The Court agrees with Plaintiffs that *Rooker-Feldman* does not apply to the instant action. But we agree with TFSB that *res judicata* does, and therefore bars Plaintiffs' claims. And, even if it did not, Plaintiff Martorano's claim under the TILA would be dismissed because it is improper and untimely, and this would necessarily cause the dismissal of Plaintiffs' other two claims. The Court addresses each of the above in turn.

### A.    *Rooker-Feldman Does Not Apply to the Instant Action*

The *Rooker-Feldman* doctrine "provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions." *Spuck v. Pa. Bd. of Prob. & Parole*, 563 F. App'x 156, 159 (3d Cir. 2014). But the Supreme Court has emphasized that *Rooker-Feldman* is a limited doctrine, only applicable where the "loser in state court invites the federal district court to overturn a state-court judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 n.2 (2005); *see also Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010) ("The doctrine applies only when a plaintiff seeks redress for an injury caused by the state court judgment, not when a plaintiff merely seeks to relitigate a claim or issue already litigated in state court.")

The Third Circuit has laid out "four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) these judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Laychock v. Wells Fargo Home Mort.*, 399 F. App'x 716, 718 (3d Cir. 2010) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010)). Here, the first and third requirements are clearly met. Plaintiffs do not dispute there was a confessed judgment entered against them in the State Court Action. (*See* Doc. No. 20 ¶¶ 41, 45); *see also In re Sabertooth, LLC*, 443 B.R. 671, 683 (Bankr. E.D. Pa. 2011), *aff'd sub nom. In re Green Goblin, Inc.*, No. 12cv4076, 2014 WL 5800601 (E.D. Pa. Nov. 6, 2014) ("[I]t is settled that the *Rooker–Feldman* doctrine applies to all judgments by a state court, including default judgments and judgments by confession. This principle derives from the more general precept that state court default judgments and confessed judgments are treated by

federal courts as judgments on the merits.")  And Judge Erdos' Order entering judgment against Plaintiffs was issued on March 14, 2025 (Doc. No. 23 at 191), more than three months prior to Plaintiffs' original Complaint in the instant action (Doc. No. 1).

"That leaves the second and fourth requirements, which the Third Circuit has described as the 'key to determining whether a federal suit presents an independent, non-barred claim.'" *Lapensohn v. Hudson City Sav. Bank*, No. 19cv4576, 2021 WL 1581402, at *8 (E.D. Pa. Apr. 21, 2021) (quoting *Great W. Mining*, 615 F.3d at 166).  The second requirement is "an inquiry into the source of the plaintiff's injury." *Great W. Mining*, 615 F.3d at 166.  "The critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (quotation marks omitted).  "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been caused by those proceedings." *Id.* (quotation marks omitted); *see also Sabertooth*, 443 B.R. at 681 ("For example, a claim that a judgment was procured by fraud is independent of the judgment and therefore, does not fall within the *Rooker– Feldman* doctrine, while a claim that the judgment itself is illegal does.")  And under the fourth requirement, the Court must ask "whether the plaintiff's claims will require appellate review of state-court decisions by the district court." *Great W. Mining*, 615 F.3d at 169.  The Court is prohibited from reviewing the state court's ruling to determine "whether it reached its result in accordance with the law." *Id.*  To determine whether the second and fourth requirements are satisfied, the Court must analyze each injury alleged by Plaintiffs. *See Williams*, 2018 WL 6600097, at *7.

Here, the Court finds the underlying injuries do not stem from the judgment in the State Court Action nor do Plaintiffs' allegations invite the Court to act as an appellate court for the State Court Action.  Plaintiffs bring three claims against TFSB: failure to disclose, deceptive conduct, and fraudulent inducement.  (Doc. No. 20 ¶¶ 48–85.)  Each of these are claims relating to the 2020 Bridge Loan and the never consummated SBA Loan.  TFSB argues that even though Plaintiffs' injuries are "caused by entering into" the Bridge Loan, they originate from the State Court Judgment because Plaintiffs have "request[ed] an award of damages for lost economic opportunities, compensatory and punitive damages."  (Doc. No. 23 at 17.)  But TFSB's argument broadens the injury requirements for these claims far beyond their limits.  As an example, Plaintiff Martorano's failure to disclose claim under TILA is specifically about TFSB's communications—or lack thereof—relating to the Bridge Loan and SBA Loan.  (*See* Doc. No. 20 ¶¶ 48–60.)  And "in fraudulent inducement [cases], the injury is the entry into the contract and the forsaking of other contracts."  *Margarite v. HRN Corp.*, No. 93cv1379, 1993 WL 283980, at *3 (E.D. Pa. July 21, 1993).  Both of these, and the deceptive conduct claim, claim injury from purportedly nefarious conduct by TFSB that began in 2020 and continued for the next few years, up until the State Court Action began.  (*See* Doc. No. 20 ¶¶ 20–32.)  Accordingly, this represents the exact kind of case discussed in *Great W. Mining* where a plaintiff may properly complain about an injury "ratified" by and "acquiesced in" the State Court Judgment, but not one produced by it.  615 F.3d at 167; *see also id.* ("When the source of the injury is the defendant's actions (not the state-court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court."); *Easley*, 394 F. App'x at 948 (holding that *Rooker-Feldman* did not bar claims "based on allegations of fraud, deception and other wrongs which pre-dated the foreclosure action"); *Turner v. Crawford Square Apartments III, L.P.*, 449

11

F.3d 542, 547 (3d Cir. 2006) (holding that the district court erred by applying *Rooker-Feldman* when the "complaint raised federal claims, grounded on the [Fair Housing Act], *not* caused by the state-court judgment but instead attributable to defendants' alleged FHA violations that preceded the state-court judgment"); *Williams*, 2018 WL 6600097, at *7 (finding that the plaintiff's injury was caused by the defendants' actions and not the state foreclosure case where the plaintiff claimed that the defendants wrongly solicited, offered, and entered into a mortgage modification agreement with no intention to honor it).

The fourth requirement, which is "is 'closely related' to the second requirement," is a closer call, but the Court finds that it also supports the inapplicability of *Rooker-Feldman* here. *Sabertooth*, 443 B.R. at 681.  TFSB argues that the damages Plaintiffs seek require this Court to "presume[] the [c]ourt in the [State Court Action] *improperly* concluded [Plaintiffs'] defenses . . . were without merit."  (Doc. No. 23 at 17 (emphasis in original).)  The Court disagrees.  "[A] district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."  *Turner*, 449 F.3d at 547–48 (citing *Exxon Mobil*, 544 U.S. at 292).  And the damages Plaintiffs seek here relate to purported injuries they suffered due to TFSB's actions that long predate even the filing of the State Court Action.  (*See* Doc. No. 20 ¶¶ 20–33.)  While it is true that the State Court Action is related to, and many of the operative facts overlap with, the instant action, that is not enough to bring this action into the ambit of *Rooker-Feldman*.  *See Turner*, 449 F.3d at 547–48; *Easley*, 394 F. App'x at 948 (finding the fourth requirement not met when action "also based on allegations of fraud, deception and other wrongs which pre-dated the foreclosure action"); *cf. David v. Phelan Hallinan Diamond & Jones, LLP,* No. 15cv3397, 2016 WL 374729 (E.D. Pa. Feb. 1, 2016), *aff'd sub nom. Todd v. U.S. Bank Nat'l Ass'n*, 685 F. App'x 103 (3d Cir. 2017)

12

(applying *Rooker-Feldman* because the "the essence" of plaintiffs' complaint required the court to conclude the "sums charged" in a mortgage foreclosure action "were improper"). TFSB's argument to the contrary relies mainly on the idea that Plaintiffs' fraud arguments were found not sufficient to open the confessed judgment in the State Court Action. But as the Supreme Court has stated in *Exxon Mobil*, "neither *Rooker* nor *Feldman* supports the notion that . . . if a state court reaches judgment on the same or a related question" the Court must find it lacks jurisdiction. 544 U.S. at 282. Instead, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.*

Thus, the Court is satisfied that Plaintiffs' claims are not of the type that implicates the narrow *Rooker-Feldman* bar, and the Court has jurisdiction to consider the claims.[7]

### B. Res Judicata Does Apply to, and Mandates Dismissal of, the Instant Action

The Court's ruling on subject matter jurisdiction is "only a short reprieve for the [Plaintiffs] and a segue by the [C]ourt to a decision, on the merits, that the federal claim is barred by" *res judicata*. *Sabertooth*, 443 B.R. at 682. "[T]he *Rooker-Feldman* inquiry is distinct from the question of whether claim preclusion (res judicata) . . . defeats the federal suit." *Great W.*

---

[7] Plaintiffs' briefing does not assist in—and in fact attempts to cloud—this finding. (*See* Doc. No. 27 at 11, 12.) In attempting to draw a distinction between the State Court Action and this instant action, Plaintiffs' response argues that this action is the first time they "seek to recover the money damages they ***will suffer*** as a result of Defendants' wrongful conduct." (Doc. No. 27 at 11 (emphasis added).) The Amended Complaint makes clear, by way of example, that these types of damages include "loss of the value of [Plaintiffs' mortgaged] [p]roperty." (Doc. No. 20 ¶ 47.) But such damages would only be possible due to the confessed judgment in the State Court Action, i.e., TFSB only gained rights in Plaintiffs' property after the confessed judgment was entered. (*See* Doc. No. 23 at 91.) By contrast, each count in the Amended Complaint makes clear that it seeks an "[a]ward [of] damages for [ ] economic opportunities . . . lost during the months that TFSB took after the [SBA] application date to approve the [SBA] [L]oan request." (*Id.* ¶¶ 60, 73, 85.) Such damages stem from conduct back in 2020 and 2021, long before the confessed judgment was entered. Nevertheless, to the extent Plaintiffs seek to assert damages stemming directly from the confessed judgment, those claims would likely fall under the bounds of and be barred by *Rooker-Feldman*. However, because the Court dismisses all claims in the Amended Complaint in full on other grounds, we need not address Plaintiffs' contradictory positions and dismiss these claims only in part.

*Mining*, 615 F.3d at 170; *see also Exxon Mobil*, 544 U.S. at 282 ("If a federal plaintiff presents an independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party, then there is jurisdiction [under the *Rooker-Feldman* doctrine], and state law determines whether the defendant prevails under principles of preclusion." (quotation marks omitted)).

This *res judicata* inquiry is where Plaintiffs' petition, and the arguments therein, seeking to open and/or strike the confessed judgment are clearly applicable. (*See* Doc. No. 20 ¶ 41; Doc. No. 23 at 111–49.) *Res judicata* bars "'repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits.'" *Williams*, 2018 WL 6600097, at *8 (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011)). And courts in this Circuit have consistently held that "state court default judgments and confessed judgments are treated by federal courts as judgments on the merits." *Sabertooth*, 443 B.R. at 683; *see also Complete Bus. Sols. Grp., Inc. v. Sunrooms Am., Inc.*, 474 F. Supp. 3d 693, 698 (E.D. Pa. 2020) (collecting cases).

"For the doctrine of res judicata to apply, a concurrence of four conditions must be shown: (1) identity in the things sued upon or for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued." *Lapensohn*, 2021 WL 1581402, at *10 (applying Pennsylvania law) (citation omitted). It is apparent, and Plaintiffs do not dispute (*see* Doc. No. 27 at 12–13), that the first, third, and fourth conditions are met. In both actions, the things sued upon or for are the Bridge Loan and the SBA Loan, both of which were squarely at issue in the State Court Action. (*See* Doc. No. 20 ¶¶ 48–85; Doc. No. 23 at 88–110, 125–28); *Easley*, 394 F. App'x at 948 (finding the plaintiff's "claim is based on allegations related to her mortgage, including events leading up to

14

its execution, and events leading up to and including the foreclosure. The 'thing sued upon' is therefore the same . . . ."). And the identities of the persons and parties, along with their quality and capacity, are identical in both actions. (*See* Doc. No. 20 ¶¶ 5–8; Doc. No. 23 at 90.)

The point of contention lies in the cause of action condition. Plaintiffs argue that because the confessed judgment was never struck or opened, they were unable to assert the exact affirmative claims that they bring here, and thus, *res judicata* does not apply. (Doc. No. 27 at 12 (arguing "none of the causes of action in the Amended Complaint were previously adjudicated in any state court action").) But Plaintiffs' argument misunderstands the cause of action condition and is belied by their own filings in the State Court Action. "[T]here is no single definition of 'cause of action' for purposes of" *res judicata*, and courts instead must focus on "facts rather than the legal theories." *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016); *see id.* (discussing how *res judicata* "generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims"); *see also Brown v. Bank of Am.*, No. 1858 WDA 2013, 2014 WL 10919554, at *5 (Pa. Super. Ct. June 20, 2014) ("[T]he essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.")

Under this framework, Plaintiffs have already had—*and took*—the opportunity to bring claims on the underlying facts in dispute here. A cursory review of Plaintiffs' filings in each action makes this clear. In both the state court petition to open and/or strike the confessed judgment and the federal Amended Complaint, Plaintiffs allege TFSB "failed to abide by contract and credit terms, failed to process a loan application in a timely manner, improperly increased the interest rate charged to Defendants[8], and, most remarkably, failed to provide a loan

---

[8] Defendants in the State Court Action are the Plaintiffs in this action. (*See* Doc. No. 20 at 1; Doc. No. 23 at 90.)

15

pursuant to the stated approval of the SBA, all of which resulted in Defendants suffering substantial, irreversible financial harm and lost opportunity costs." (Doc. No. 23 at 126–27; *see* Doc. No. 20 ¶ 2 (changing only the words "manner" to "fashion"; "Defendants" to "Isabella Pizza Inc. and Bella Investment Properties" and "Plaintiffs"; and "SBA" to "Small Business Association").) The petition to open and/or strike goes on to detail the exact factual scenario pleaded here: Plaintiffs sought the SBA Loan from TFSB; TFSB failed to provide it; TFSB offered the Bridge Loan, which Plaintiffs accepted only as a stopgap; and Plaintiffs eventually lost the opportunity to receive the SBA Loan. (*See* Doc. No. 20 ¶¶ 12–31; Doc. No. 127–28, 141–42.) And it does not matter that in the State Court Action these claims were characterized as "meritorious defenses" and here they are affirmative claims, nor does it matter that only here have Plaintiffs' sought monetary damages. *See Lapensohn*, 2021 WL 1581402, at *11 ("The doctrine applies equally to plaintiffs and defendants in the first suit, barring consideration in a second suit of counterclaims and defenses that the party might have, but did not raise.") (quotation marks omitted); *Laychock*, 399 F. App'x at 719 ("The doctrine [of *res judicata*] applies not only to claims that are actually litigated, but also to those that could have been litigated in the first proceeding.") Merely because Plaintiffs were unsuccessful in their bid to open and/or strike the confessed judgment, does not mean their claims have not already been adjudicated. Thus, the doctrine of *res judicata* bars their claims in the instant action.

### C.    *Even if Res Judicata Did Not Apply, This Action Would Still Be Dismissed*

Alternatively, Plaintiffs' claims would also be dismissed with prejudice due to (1) Plaintiff Martorano's failure to state a claim in Count One, the claim under the TILA, and (2) this failure leading to this Court losing subject matter jurisdiction over this action.

16

1.    **TILA Does Not Apply to the Loans at Issue and the Claim under the TILA Is Untimely**

Plaintiff Martorano is the owner of the Companies, who are the other two Plaintiffs here. (*See* Doc. No. 20.)  But Count One is brought only by Plaintiff Martorano, in her individual capacity, under the TILA.  (*Id.* ¶ 48.)  She alleges that in violation of TILA, TFSB "failed to meaningfully disclose the time for closing" the SBA Loan and failed to "properly and accurately disclose the interest rate" for the Bridge Loan.  (*Id.* ¶¶ 51, 55.)  TFSB challenges Count One on two grounds:  (1) TILA does not apply to the Bridge Loan and SBA Loan, which are the transactions at issue here, and (2) even if it did, this action is untimely under the TILA.  (Doc. No. 23 at 21–23.)  The Court agrees.

The TILA "applies only to 'consumer' credit transactions, which the statute defines as transactions in which 'the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'"  *Sherlock v. Herdelin*, No. 04cv3438, 2008 WL 732146, at *3 (E.D. Pa. Mar. 17, 2008), *aff'd*, 434 F. App'x 57 (3d Cir. 2011) (quoting 15 U.S.C. § 1602(h) and 12 C.F.R. § 226.2(a)).  "TILA explicitly provides that it does not cover '[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes.'"  *Id.* (quoting 15 U.S.C. § 1603(1)).  As Plaintiffs' Amended Complaint makes clear, the reason Plaintiffs sought a loan was because "the Companies were in critical need of financing . . . to refinance existing obligations and to enable the Companies subsequently to obtain construction funding."  (Doc. No. 20 ¶¶ 13, 17.)  In other words, the loan was for a business purpose.

Plaintiffs' attempts to argue around their own pleading are unavailing.  They cite only to a single out of Circuit case, *Thorns v. Sundance Props.*, 726 F.2d 1417 (9th Cir. 1984), for the proposition that "[w]hen an individual uses funds towards a business interest, said transaction

17

can be considered for a personal purpose under TILA." (Doc. No. 27 at 18.)  As Plaintiff

Martorano was guarantor on the Bridge Loan, they argue this is sufficient to implicate TILA at

the motion to dismiss stage.  (*Id.*)  But Plaintiffs overread *Thorns*.  There, the Ninth Circuit

reversed a grant of summary judgment to a defendant under TILA because there was a question

of fact as to whether an individual plaintiffs' "investment in a limited partnership formed to

purchase an apartment building necessarily constitutes a business or commercial purpose within

the meaning of the [TILA] exemption." *Thorns*, 726 F.2d at 1418.  Here, the purpose of the loan

was to further the Companies' business interests.  Whether, or to what extent, Plaintiff

Martorano was involved individually as guarantor is irrelevant to the business purpose analysis.

*See St. Hill v. Tribeca Lending Corp.*, 403 F. App'x 717 (3d Cir. 2010) (discussing how "simply

because the loan is secured by [personal means] does not mean that the loan was primarily

personal"); *Thomas v. Jersey Mortg. Co.*, No. 13cv0648, 2016 WL 4705449, at *10 (D.N.J. Sept.

8, 2016) ("It is the purpose of the loan, not the character of the secured property, that controls the

characterization of the credit transaction as consumer or commercial.").  So, Plaintiff

Martorano's claim under the TILA is not proper.

And even if it were proper, the claim is untimely.  Under TILA, a claim for civil liability

must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C.

§ 1640(e).  And this runs "from the date of the consummation of the transaction." *Leisy v. First

E. Corp.*, No. 91cv305, 1991 WL 1179813, at *5 (M.D. Pa. Sept. 17, 1991).  The transaction in

question here is the Bridge Loan, which was consummated in July 2020.  (Doc. No. 20 ¶ 23.)

Plaintiffs claim is thus almost four years untimely.  Plaintiffs argue the doctrine of equitable

tolling should save Plaintiff Martorano's claim under the TILA, because they could not have

known about the "damages incurred" until "TFSB filed the confessed judgment."  (Doc. No. 27

18

at 19.)  "Three scenarios exist when equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 560 (M.D. Pa. 2010).  Here, Plaintiffs assert the first scenario is applicable.  They allege that they had an understanding with TFSB that it "would not take any adverse action against them" so long as they made monthly payments on the Bridge Loan, so they did not realize "the damages incurred" until TFSB filed the confessed judgment.  (Doc. No. 27 at 19.)  But this does not rise to the level of active misleading, because nowhere in Plaintiffs' Amended Complaint do they allege TFSB took post-consummation steps to mislead Plaintiff Martorano about "the time for closing" the SBA Loan or that it lied about "the interest rate" for the Bridge Loan.  (Doc. No. 20 ¶¶ 51, 55.)  So, Plaintiff Martorano's claim under the TILA is also untimely and subject to dismissal for this independent reason.

### 2.    Without the Claim Under the TILA, This Court Must Decline Supplemental Jurisdiction Over the Other Two Claims

And, if this Court determined that the claim under the TILA must be dismissed with prejudice, it would not properly have jurisdiction over Plaintiffs' other two claims.  "Article III courts [like this one] are courts of limited jurisdiction." *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 364 (M.D. Pa. 2015).  Count One is the only federal claim in this action; the other two are based on state law.  (*See* Doc. No. 20 ¶¶ 48–85.)  And under 28 U.S.C. 1367(a), Article III courts only "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Without the Count One, this Court "*must* decline to decide [Plaintiffs'] pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an

19

affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (internal quotations omitted) (emphasis in original); *see also* 28 U.S.C. § 1367(c)(3). Those considerations would not support retaining jurisdiction here.

## IV.    Conclusion

For the foregoing reasons, the Court finds that the *Rooker-Feldman* doctrine does not bar Plaintiffs' claims. But the claims are barred by *res judicata* and thus must be dismissed with prejudice. And even if the Court were to find that *res judicata* did not apply, it would still dismiss the case with prejudice due to Plaintiffs' failure to state a claim that implicates this Court's jurisdiction.

An appropriate Order follows.